# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CHRISTOPHER JEFFRIES, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. 8:17-cv-02973-PX |
| MAHIR AYOUB, | * | |
| Defendant. | * | |

***

## MEMORANDUM OPINION

Pending before the Court is Defendant Mahir Ayoub's partial motion for summary judgment. ECF No. 32. The motion is fully briefed, and no hearing is necessary. *See* Loc. R. 105.6. For the following reasons, the Defendant's motion is GRANTED in part and DENIED in part.

**I. Background**

On January 16, 2016, Plaintiff Christopher Jeffries was working a night shift as a food delivery driver for an online service called Zoomer. Pl. Ex. 3 at 29–30 (Jeffries Dep.).[1] Jeffries drove down Route 1 from College Park towards Hyattsville to make a delivery on Lawrence Street. *Id.* at 34. As Jeffries was exiting at 47th Street to get on Kenilworth Avenue southbound, he noticed a police car behind him. *Id.* at 35–38. Ayoub, a Bladensburg Police Officer, was driving the police vehicle. Ayoub activated his emergency lights and moved closer to Jeffries's vehicle. *Id.* at 38. Jeffries saw the police lights but expected the police car to pass his vehicle because the officer had not signaled for Jeffries to pull over. *Id.* at 42. Eventually, Jeffries realized that the police intended to pull him over, and did so in a well-lit area that was, in

---

[1] The exhibits attached to Plaintiff's response in opposition were filed with the Court in paper format. The Court cites to these exhibits by the number noted in Plaintiff's paper filings beginning with the prefix "Pl. Ex."

Jeffries' view, the "first safe place" to stop. *Id.* at 43. By Ayoub's estimation, Jeffries stopped his vehicle about a half mile away from the point Ayoub first activated his emergency lights. Pl. Ex. 2 at 83 (Ayoub Dep.). Ayoub further estimates that Jeffries drove for about thirty to forty-five seconds from activation of the police lights to Jeffries stopping the car. Jeffries maintains, and Ayoub agrees, that during the half-mile drive, Jeffries did not speed and in fact was decreasing his speed and was traveling only 10 or 15 miles per hour. Pl. Ex. 3 at 53–54 (Jeffries Dep.); Pl. Ex. 2 at 49 (Ayoub Dep.).[2]

Once Jeffries' vehicle was stopped, Ayoub approached the car with his gun unholstered and pointing toward the vehicle in a downward trajectory. Pl. Ex. 2 at 95 (Ayoub Dep.). Ayoub was yelling orders, the precise content of which Jeffries could not decipher. Pl. Ex. 3 at 45–47 (Jeffries Dep.). Jeffries started to video record the encounter on his cell phone.[3] *Id.* at 45. The recording captures Ayoub shouting at Jeffries to put his phone down and to completely roll down the window, adding that it would go from "bad to real bad" if Jeffries did not comply. ECF No. 32-2 (Video). Jeffries rolled down his window further, handed Ayoub his license and told the officer he did not have his registration. *Id.* Jeffries told Ayoub that he was scared that Ayoub would kill him. Ayoub repeatedly ordered Jeffries to get out of the car and yelled, "I'm going to pull you out of the car." *Id.* Ayoub's back-up, Officer Jaime Amaya, also ordered Jeffries out of the car. *Id.* Jeffries remained in the driver's seat and questioned the officers' orders to get out of the vehicle, at which point the video recording ends. *Id.*

Notably, where the video stops, the parties' versions of events diverge. According to

---

[2] Ayoub asks the Court to take judicial notice of the distance between the "point where Plaintiff first recognized that the vehicle behind him was a police car and the place where Plaintiff ultimately stopped." ECF No. 40 at 8. The Court declines this invitation and will consider the evidence as presented.

[3] Defendant filed with the Court a compact disc with a copy of the approximately two-minute long video. *See* ECF No. 32-2 at 2.

Jeffries, the encounter turned violent. One of the officers pulled Jeffries out of the car, and Ayoub threw him to the ground and "rubbed [his] face in the concrete." Pl. Ex. 3 at 77 (Jeffries Dep.).[4] While face down into the concrete, Jeffries was handcuffed and had something driven between his shoulder blades, which felt like "a knee . . . or the barrel of a gun." *Id.* at 77–78. The officers then picked up Jeffries and leaned him face down against the trunk of his car. *Id.* at 82. At some point, a third officer loosened the handcuffs, and then Ayoub threw Jeffries in the back of his police vehicle, and punched Jeffries repeatedly in the stomach while Jeffries was cuffed. *Id.* at 83, 85–86. Ayoub eventually transported Jeffries to the police station and charged him with an array of criminal offenses, including second degree assault of a police officer, resisting a lawful arrest, and eluding an officer. *Id.* at 100–01; *see also* Pl. Ex. 8. On July 11, 2016, all criminal charges against Jeffries were *nolle prossed*. *See* Pl. Ex. 8.

According to Officers Ayoub and Amaya, while Jeffries was still sitting in his car, Ayoub stuck his hand in the car through the window to unlock the door. Pl. Ex. 2 at 125 (Ayoub Dep.). Jeffries "smacked [his] hand." *Id.* Ayoub then opened the unlocked door and Jeffries exited the vehicle on his own. *Id.* at 127–28. Officers Ayoub and Amaya told Jeffries as he was getting out of the car that he was under arrest and ordered him to place his hands on his head or behind his back. *Id.* at 128. Jeffries did not present his hands for cuffing but rather held them to his chest and clenched his fists in "a fighting stance." *Id.* Amaya and Ayoub took Jeffries to the ground and handcuffed him. Pl. Ex. 5 at 34 (Amaya Dep.). Ayoub searched Jeffries' vehicle "for weapons or contraband." ECF No. 41-2 at 61. Ayoub denies using any kind of force against Jeffries after arresting him and placing him in the police car. *Id.* at 59.

---

[4] While Jeffries testified that he does not remember which officer actually removed him from the car (Pl. Ex. 3 at 80–81), in his interrogatory responses, Jeffries stated it was Ayoub who "slammed me to the street." ECF No. 32-3 at 6.

3

Jeffries filed this suit against Ayoub in the Circuit Court for Prince George's County on June 13, 2017, asserting claims for unlawful arrest and excessive force under 42 U.S.C. § 1983, and Articles 24 and 26 of the Maryland Declaration of Rights,[5] as well as common law claims for assault and battery, malicious prosecution, false arrest, false imprisonment, and intentional infliction of emotional distress. ECF No. 2 ¶¶ 26–61. Ayoub timely removed the action to this Court, and now moves for partial summary judgment as to certain of Jeffries' excessive force counts, and the assault and battery and intentional infliction of emotional distress claims. ECF No. 33 at 9 n.6, 13.

## II. Standard of Review

Summary judgment is appropriate when the Court, viewing the evidence in the light most favorable to the non-moving party, finds no genuine disputed issue of material fact, entitling the movant to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)). "A mere scintilla of proof . . . will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003).

Importantly, "a court should not grant summary judgment 'unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under any circumstances.'" *Campbell v. Hewitt, Coleman & Assocs., Inc.*, 21 F.3d 52, 55 (4th Cir. 1994) (quoting *Phoenix Sav. & Loan,*

---

[5] Article 24 provides substantive due process rights, while Article 26 protects the right to be free from unreasonable searches and seizures. Md. Const., Dec. of Rights arts. 24, 26.

*Inc. v. Aetna Casualty & Sur. Co.*, 381 F.2d 245, 249 (4th Cir. 1967)). Where the party bearing the burden of proving a claim or defense "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment against that party is likewise warranted. *Celotex*, 477 U.S. at 322.

### III. Discussion

#### A. Evidentiary Issues

As a threshold matter, Ayoub argues that this Court should not consider certain evidence when deciding the summary judgment motion. Ayoub urges the Court to ignore Jeffries' exhibits because they were not filed properly and to strike Jeffries' affidavit (Pl. Ex. 4) to the extent it contradicts Jeffries' deposition testimony. Ayoub raised these arguments for the first time in his reply, which ordinarily this Court will not consider. *Clawson v. FedEx Ground Package Sys., Inc.*, 451 F. Supp. 2d 731, 734 (D. Md. 2006) (citation omitted). That said, the Court, in its discretion, may reach the arguments in "appropriate circumstances," such as when reply was the moving party's "first opportunity to brief the issues" or the opposing party has still had an opportunity to respond. *Id.* at 734–35.

As to the exhibits, Ayoub could not have mounted the challenge in his motion because, obviously, the issue first presented itself when Jeffries did not properly file the exhibits on ECF along with his response. Ayoub argues the proper remedy for the delayed submission of the exhibits is to strike them from the record. However, the Court has already granted Ayoub's request for additional time to review the exhibits and address them in reply. After Jeffries filed his exhibits in person with the Clerk's office, not in conformity with the District's Local Rules, *see* Loc. R. 105.1(a) (exhibits "should be filed electronically in accordance with the procedures

adopted by the Court"), Ayoub sought a continuance to address the delay in his receiving the exhibits. *See* ECF Nos. 42, 43. Ayoub now seeks, effectively, a windfall on the merits, even after receiving an adequate accommodation that he requested. The Court sees no reason to gut Jeffries' case as Ayoub suggests. The exhibits, however, must be made part of the public record and Jeffries shall not receive special dispensation in that regard. Within 14 days from the date of this Opinion and accompanying Order, Jeffries must file the exhibits electronically, via ECF.

Ayoub next argues that Jeffries' affidavit submitted as a summary judgment exhibit must be stricken because it contradicts an answer he previously gave during his deposition. The Court recognizes that on summary judgment, it may not consider any evidence successfully challenged as inadmissible. Fed. R. Civ. P. 56(e); *see also Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996). At his deposition, Jeffries was asked about the first thing he remembered Ayoub saying to him. *See* Pl. Ex. 3 at 65. Jeffries responded, "the first thing I can remember him saying is failing, eluding . . . failing to stop or eluding a police officer." *Id.* The video shows Ayoub actually saying that Jeffries "fail[ed] to yield for a police officer," rather than eluding an officer. In Jeffries' affidavit, he attests that his answer at the deposition was "inadvertently" wrong in that the video reflects Ayoub stating he pulled Jeffries over for failing to yield. Pl. Ex. 4. Although a self-serving affidavit submitted for the purpose of generating a dispute of material fact may be excluded, *Godbolt v. Trinity Prot. Servs., Inc.*, No. GJH-14-3546, 2017 WL 2579020, at *1 n.2 (D. Md. June 12, 2017), this is not that. In sum and substance, Jeffries' affidavit acknowledges that his recollection as he testified in his deposition was inconsistent with the video. But the larger point remains the same: the first thing Jeffries remembers is the officer notifying him of the basis for the stop. However, out of an abundance of caution, the Court will not consider the affidavit in the summary judgment determination.

6

The Court turns to the merits of Ayoub's summary judgment motion.

### B. Excessive Force Claims (Counts I, II, and III)[6]

Ayoub confines his motion to all excessive force claims arising from events prior "to the time the Plaintiff was handcuffed" and does not seek summary judgment as to whether he assaulted Jeffries once handcuffed in Ayoub's police vehicle. ECF No. 33 at 9 n.6. Ayoub specifically contends that the force used to arrest Jeffries was objectively reasonable under the circumstances. Alternatively, Ayoub maintains that even if excessive force was used, he is entitled to qualified immunity as a matter of law. *Id.* at 10.

The Court first considers whether Ayoub used excessive force in violation of the Fourth Amendment in the events leading up to handcuffing Jeffries. "The Fourth Amendment prohibition on unreasonable seizures bars police officers from using excessive force to seize a free citizen." *E.W. by & through T.W. v. Dolgos*, 884 F.3d 172, 179 (4th Cir. 2018) (citation omitted). Objective reasonableness is the touchstone of a Fourth Amendment excessive force analysis, namely, whether a reasonable officer in the defendant's shoes would have known that the force applied was excessive for the situation at hand, without regard to the officer's "underlying intent or motivation." *Id.*; *see also Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). Importantly, where "force [is] justified at the beginning of an encounter," that same force may not be justified "even seconds later if the justification for the initial force has been eliminated." *Waterman v. Batton*, 393 F.3d 471, 481 (4th Cir. 2005).

---

[6] Jeffries brings excessive force claims under Articles 24 and 26 of the Maryland Declaration of Rights, as well as the Fourth Amendment of the U.S. Constitution through 42 U.S.C. § 1983. "Maryland courts construe Article 26 in *pari materia* with the Fourth Amendment, such that its comparable provisions are essentially equated to the Fourth Amendment's protections against unreasonable searches and seizures." *Stutzman v. Krenik*, 350 F. Supp. 3d 366, 377 (D. Md. 2018) (citation omitted); *see also Randall v. Peaco*, 175 Md. App. 320, 330 (2007) ("[A] claim of excessive force brought under Article 24 is analyzed in the same manner as if the claim were brought under Article 26. In both instances, the claim is assessed under Fourth Amendment jurisprudence . . . precisely like the analysis employed for claims brought under 42 U.S.C. § 1983.") (citations omitted). Accordingly, the same analysis applies to Counts I, II, and III.

7

Three factors drive the Court's excessive force analysis: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *E.W. by & through T.W.*, 884 F.3d at 179 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). These factors, however, are not exclusive; rather, the Court must determine based on the totality of the circumstances whether the force the officer used was reasonable. *Id.* at 179 (internal marks and citations omitted).

Ayoub argues that if the video "depicts what occurred on the night of his arrest, the Court may determine as a matter of law that the evidence presented regarding Plaintiff's use of excessive force, is insufficient to establish <u>any</u> use of excessive force claim, *up to the time Plaintiff was handcuffed*." ECF No. 40 at 10 (underline in original, other emphasis added). As is often the case, the video does not tell the whole story. In this particular instance, Ayoub's argument borderlines on the frivolous in that the recording *ends* with Jeffries still sitting in the driver's seat of his vehicle and does not capture all events up to the time Jeffries was handcuffed. *See* Pl. Ex. 2. at 212 (Ayoub testifying that the video "only depicts two minutes of the interaction I had").

As to what happened between the time the video ended and Jeffries' arrest, the parties are deeply divided. Ayoub maintains Jeffries ultimately exited the vehicle on his own (Pl. Ex. 2 at 127), while Jeffries recounts being violently extracted and thrown to the ground. Pl. Ex. 3 at 77–78. Jeffries further describes being pushed into the asphalt while being handcuffed, and without having provoked the need for his arrest to have been effectuated with such force.

Taken in the light most favorable to the plaintiff, a genuine issue of disputed fact exists as to whether Ayoub used excessive force to arrest Jeffries. *See Veney v. Ojeda*, 321 F. Supp. 2d

8

733, 743 (E.D. Va. 2004). The evidence reflects that Jeffries, at worst, committed a misdemeanor offense by failing to pull over for one-half mile. Notably, Jeffries "did not create a public danger by driving at a reckless speed, leading [the officer] on a high-speed chase, or taking evasive maneuvers." *Stutzman v. Krenik*, 350 F. Supp. 3d 366, 382 (D. Md. 2018); *see also Jones v. Buchanan*, 325 F.3d 520, 528 (4th Cir. 2003) ("Even in a case in which the plaintiff had committed a crime, when the offense was a minor one, we have found that the first *Graham* factor weighed in plaintiff's favor and upheld the denial of summary judgment to the defendant police officer.") (internal marks and citations omitted). In fact, it is undisputed that Jeffries slowed down during the half mile drive. Also, during this time, Ayoub concedes that he had no evidence Jeffries was armed. ECF No. 41-2 at 49 (Ayoub Dep.); *see also Veney*, 321 F. Supp. 2d at 743. Once Jeffries pulled over, he told them he was scared and, while he questioned the basis of the stop, he ultimately complied with their instructions.

Ayoub, however, approached the vehicle with his gun drawn, pointed it in Jeffries' direction, and kept it trained on the vehicle as he approached. Pl. Ex. 3 at 45 (Jeffries' testimony that first thing he saw "was the barrel of a pistol"). Further escalating tensions, Ayoub consistently and persistently shouted commands at Jeffries, and at one point said "it" would "go from bad to real bad" if Jeffries did not immediately comply. Jeffries told the officer he was afraid and showed Ayoub his empty hands, all the while repeatedly asking why he needed to get out of the car. The officers extracted Jeffries physically from the car. Ayoub threw Jeffries to the ground, kneed him in the back, and rubbed his face into the asphalt. A reasonable factfinder, therefore, could determine that the force used to effectuate Jeffries' arrest was unreasonable under the circumstances.

Ayoub next argues that if the Court denies summary judgment on the question of

9

excessive force, it should find as a matter of law that he is qualifiedly immune. The Court, again, must disagree.

Having determined that genuine issues of material fact preclude summary judgment on whether Ayoub violated Jeffries' Fourth Amendment rights, the Court must determine whether Ayoub enjoys the protections of qualified immunity as a matter of law. Qualified immunity "shields government officials from liability for civil damages, provided that their conduct does not violate clearly established statutory or constitutional rights within the knowledge of a reasonable person." *Meyers v. Balt. Cty.*, 713 F.3d 723, 731 (4th Cir. 2013) (*citing Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Whether the right asserted was clearly established is determined "at the time of the events at issue." *Miller v. Prince George's Cty.*, 475 F.3d 621, 626–27 (4th Cir. 2007) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). If, as a matter of law, the right at issue was *not* clearly established at the time, then Ayoub is qualifiedly immune.

Although qualified immunity should be decided at the earliest possible phase of a case, disputed issues of fact may preclude determining the question of qualified immunity until trial. *Alexia Burno-Whalen v. Maryland*, No. GJH-15-564, 2016 WL 1259556, at *5 (D. Md. Mar. 28, 2016) (*citing Shoemaker v. Smith*, 353 Md. 143, 167 (1999)). The officer bears the burden of proving that qualified immunity applies. *Henry v. Purnell*, 501 F.3d 374, 378 (4th Cir. 2007) (citations omitted).

A right is clearly established if "a reasonable official would understand that what he is doing violates the right in question." *Waterman*, 393 F.3d at 476 (quoting *Saucier*, 533 U.S. at 202); *see also Reichle v. Howards*, 566 U.S. 658, 664 (2012) (a clearly established right is one "sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right.") (internal marks and alteration omitted). Whether a right is clearly

established turns on whether the law at the time "gave the officials 'fair warning' that their conduct was unconstitutional." *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 313 (4th Cir. 2006) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). The law in this respect can be the controlling authority in the relevant jurisdiction or based on a "consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful." *Waterman*, 393 F.3d at 476 (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999)). In this Circuit, it is clearly established "that officers using unnecessary, gratuitous, and disproportionate force to seize a secured, unarmed citizen, do not act in an objectively reasonable manner." *Veney*, 321 F. Supp. 2d at 744 n.16 (quoting *Buchanan*, 325 F.3d at 532); *see also Kane v. Hargis*, 987 F.2d 1005, 1008 (4th Cir. 1993) (denying qualified immunity where officer pinned plaintiff to the ground and "push[ed] her face into the pavement" after she resisted arrest).

Taking the evidence most favorably to Jeffries, if he successfully convinces the trier of fact that Ayoub pulled an unarmed and cooperative Jeffries from the vehicle, threw him to the ground and rubbed his face into the asphalt, the violated right was clearly established. Put differently, if Jeffries is believed at trial that Ayoub used force grossly disproportionate to the needs of the situation, then Ayoub will not enjoy the protection of qualified immunity. *See Buchanan*, 325 F.3d at 532. Thus, the Court cannot reach the question of qualified immunity in advance of trial. Summary judgment is denied as to Counts I, II, and III.

### C. Assault & Battery (Count IV)

In a footnote to his motion, Ayoub requests partial summary judgment as to Jeffries' assault and battery claims, without any further argument or support. ECF No. 33 at 9 n.6. Although "the term 'assault' is often used interchangeably with battery to embrace conduct that constitutes battery," they are distinct crimes under Maryland common law. *Jones v. Chapman*,

11

No. ELH-14-2627, 2017 WL 2472220, at *24 (D. Md. June 7, 2017) (citing *Lamb v. State*, 93 Md. App. 442, 428-433 (1992). "A battery occurs when one intends a harmful or offensive contact with another without that person's consent." *Id.* at *25 (quoting *Nelson v. Carroll*, 355 Md. 593, 601 (1999)). Whereas "[a]n assault is a consummated battery, an attempted battery, or placing a victim in reasonable fear of an imminent battery." *Id.* (citing *Snyder v. State*, 210 Md. App. 370, 381–82 (2013)).

Jeffries' assault and battery claims are premised on the same facts as his excessive force claim. While "an officer is not liable for battery for using a reasonable amount of force when effectuating a lawful detention or arrest," *Stutzman*, 350 F. Supp. 3d at 383, an officer may be liable if he "uses excessive force, or force greater than is reasonably necessary under the circumstances." *Id.* (quoting *French v. Hines*, 182 Md. App. 201, 266 (2008)). Accordingly, for the same reasons genuine issues of fact preclude summary judgment as to Jeffries' excessive force claims, the Court also denies summary judgment as to the assault and battery allegations.

### D. Intentional Infliction of Emotional Distress (Count VIII)

Ayoub further seeks summary judgment in his favor as to Jeffries' intentional infliction of emotional distress claim. Ayoub primarily argues that he is entitled to statutory public official immunity as to this claim. Maryland Code, Cts. & Jud. Proc. § 5–507(a)(1) provides that a municipal official, "while acting in a discretionary capacity, without malice, and within the scope of the official's employment or authority" is immune from civil liability that arises from those actions. In this context, malice means conduct which is "motivated by ill will, by an improper motive, or by an affirmative intent to injure." *Solis v. Prince George's Cty.*, 153 F. Supp. 2d 793, 805 (D. Md. 2001) (quoting *Shoemaker*, 353 Md. at 164). A plaintiff "must point to specific evidence that raises an inference that the defendant's actions were improperly motivated in order

to defeat the motion." *Koon as next friend of Glay v. Prince George's Cty.*, No. DKC 17-2799, 2019 WL 1317401, at *7 (D. Md. Mar. 22, 2019) (quoting *Hines v. French*, 157 Md. App. 536, 563 (2004)). While Jeffries did not respond to Ayoub's motion with respect to this claim, Jeffries alludes to an improper motive of racial discrimination elsewhere in his response. *See* ECF No. 38 at 12–13.

Even if Ayoub is not immune, however, the Court finds the evidence, viewed most favorably to Jeffries, fails to prove an intentional infliction of emotion distress ("IIED") claim as a matter of law. IIED claims are reserved for only the most shocking circumstances where a defendant's extreme and outrageous acts cause the plaintiff severe emotional distress. *Tavakoli-Nouri v. State*, 139 Md. App. 716, 728 (2001). The claim, at bottom, is meant to survive challenge "sparingly and only for opprobrious behavior that includes truly outrageous conduct." *Savage v. Mayor & City Council of Salisbury*, No. CCB-08-3200, 2010 WL 3038953, at *6 (D. Md. July 30, 2010) (citation omitted). A plaintiff must show that "he suffered a *severely* disabling emotional response to the defendant's conduct, and that the distress was so severe that no reasonable man could be expected to endure it." *Thacker v. City of Hyattsville*, 135 Md. App. 268, 315 (2000) (internal marks and citation omitted). This standard sets a high bar. *See B.N.S. by Stuart v. Brito*, No. ELH-17-2670, 2018 WL 5830565, at *10 (D. Md. Nov. 6, 2018). Accordingly, "conclusory statements of emotional distress" without demonstrably severe injury are routinely rejected by Maryland courts. *Karn v. PTS of Am., LLC*, No. GJH-16-3261, 2017 WL 4162251, at *5 (D. Md. Sept. 19, 2017).

Jeffries' claim fails as to the severity of his emotional injury, even accepting Jeffries' injuries as described and most favorably to him. Jeffries describes that, as a result of his arrest, he has difficulty sleeping, has experienced extreme fluctuations in weight, and finds it difficult to

be in various social settings. Pl. Ex. 3 at 150–51. But these injuries, while serious, simply do not rise to the level of severity necessary to sustain the claim. *See Takacs v. Fiore*, 473 F. Supp. 2d 647, 652 (D. Md. 2007) (dismissing claim where plaintiff alleged "severe depression, anxiety, sleeplessness, headaches and [being] sick to her stomach" but not that "she has been unable to function on a daily basis"); *Caldor, Inc. v. Bowden*, 330 Md. 632, 643–45 (1993) (finding that plaintiff failed to establish the severity prong through one visit to a psychologist, and testimony that he lost weight, had difficulty sleeping, and felt "upset" and "embarrassed"). Accordingly, the Court grants summary judgment in Ayoub's favor.

### E. Other State Law Tort Claims (Counts V, VI, VII)

As to the remaining claims of malicious prosecution, false arrest, and false imprisonment, Ayoub challenges the sufficiency of the claims for the first time in his reply. *See* ECF No. 40 at 9. Further, Ayoub gives the Court no reason to justify his delay, and so the arguments will not be considered. *Clawson*, 451 F. Supp. 2d at 734; *see also United States v. Al-Hamdi*, 356 F.3d 564, 571 (4th Cir. 2004) ("It is a well settled rule that contentions not raised in the argument section of the opening brief are abandoned."). Accordingly, the Court denies summary judgment on Counts V, VI, and VII.

## IV. Conclusion

For the foregoing reasons, the Court GRANTS in part and DENIES in part Ayoub's motion for summary judgment. Jeffries shall file electronically, within 14 days, the exhibits to his response in opposition. A separate Order follows.

| | |
|---|---|
| 07/23/2019 | /S/ |
| Date | Paula Xinis |
| | United States District Judge |